UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIDAL WHITLEY,

                                    Plaintiff,

                                                          9:15-CV-0378
           v.                                              (MAD/RFT)

STATE OF NEW YORK DEPARTMENT
OF CORRECTIONS AND COMMUNITY
SUPERVISION; et al.,

                                  Defendants.
_____

APPEARANCES:

VIDAL WHITLEY
10-B-2619
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint brought by pro se plaintiff Vidal Whitley.[1] Plaintiff, who is confined at Great Meadow Correctional Facility and has not paid the filing fee for this action, seeks leave to proceed in forma pauperis.

## II.    IN FORMA PAUPERIS APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No.

---

[1] Plaintiff has filed five other civil rights action in the Northern District since 2006.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's in forma pauperis application (Dkt. No. 5), the Court finds that he has demonstrated economic need.  Plaintiff has also filed the inmate authorization required in the Northern District of New York.  Dkt. No. 6.  As a result, the Court grants plaintiff's in forma pauperis application.

### III.    SUFFICIENCY OF THE COMPLAINT

#### A.    Standard of Review

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). Similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in

---

[2]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

2

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints). Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, . . ." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[3]

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, . . . prepare an adequate defense,'" and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at \*1

---

[3] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, \*1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial . . . resources[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id. at 325.*

3

(S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Summary of the Complaint**

In his complaint, plaintiff asserts claims arising out of his confinement at Clinton Correctional Facility ("Clinton C.F."). Dkt. No. 1 ("Compl.") at 1-3.[4] The following facts are set forth as alleged in the complaint. On June 23, 2014, C.O. Bean and an unidentified sergeant falsely accused plaintiff of threatening to throw feces on them and used excessive

---

[4] Plaintiff wrote his complaint on forms available for use in commencing an action in the New York Court of Claims.

force against plaintiff "out of retaliation." *Id.* at 2-3.[5] C.O. Bean wrote a misbehavior report against plaintiff; plaintiff was also subjected to a cell shield order. *Id.*[6] The misbehavior report was "dismissed" on July 14, 2014; however, the cell shield order remained in effect until August 11, 2014. *Id.* The weather was "very humid & very hot" and the cell shield was "smothering." *Id.* at 2-3. Plaintiff's mail was tampered with at Clinton C.F. and at Southport Correctional Facility. *Id.* at 2. In addition to C.O. Bean, plaintiff names Clinton C.F. Superintendent Racette, Deputy Superintendent Brown, Clinton C.F., and the Department of Corrections and Community Supervision ("DOCCS") as defendants. *Id.* at 1, 3. Plaintiff seeks an award of money damages. *Id.* at 4.

Based upon the foregoing, and construing the complaint liberally, plaintiff claims that excessive force was used against him, and he was improperly subjected to a cell shield order without due process, confined under conditions which constituted cruel and unusual punishment and retaliated against in violation of his constitutional rights. Plaintiff also claims that his mail was tampered with. For a complete statement of plaintiff's claims, reference is made to the complaint.

**C.     Analysis**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885

---

[5] Plaintiff states that he is attempting to learn the identify of this sergeant.

[6] A cell shield is defined as a "transparent cell front covering, equipped to provide adequate ventilation." 7 NYCRR 305.6. A cell shield may be ordered for "good cause," including "(1) Spitting through the cell door, or the throwing of feces, urine, food, or other objects through the cell door." *Id.*

5

F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).[7] Thus, a plaintiff must demonstrate "'a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

### (1) Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2)

---

[7] Supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[8]

Here, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's excessive force claim against C.O. Bean survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### (2) Denial of Due Process

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). Thus, the Fourteenth Amendment will be implicated where the restraints placed on an inmate constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

---

[8] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9); *see also Cole v. Fischer*, 379 Fed. App'x 40, 43 (2d Cir. 2010) (reversing grant of summary judgment to defendants and noting that although verbal harassment, standing alone, does not amount to a constitutional deprivation, plaintiff's amended complaint alleged that [defendant] became physically abusive and hit plaintiff in the face while using racial epithets and referring to plaintiff's religion.). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)).

7

(1995).[9] "[C]ourts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell." *Breazil v. Bartlett*, 998 F. Supp. 236, 243 (W.D.N.Y. 1997); *accord Samms v. Fischer*, No. 9:10-CV-0349 (GTS/TWD), 2013 WL 5310215, at *10 (N.D.N.Y. Sept. 20, 2013); *Figueroa v. Storm*, No. 07-CV-0018, 2011 WL 1598922, at *6 (W.D.N.Y. Apr. 28, 2011); *Kemp v. LeClaire*, No. 03-CV-0844, 2007 WL 776416, at *8 (W.D.N.Y. March 12, 2007); *DeMaio v. Mann*, 877 F. Supp. 89, 93 (N.D.N.Y.), *aff'd*, 122 F.3d 1055 (2d Cir. 1995).[10]

Here, upon review of the complaint, the Court finds that plaintiff has not alleged facts which plausibly suggest that he enjoyed a protected liberty interest in being free from the confinement complained of or that he was denied due process in connection with the implementation and administration of the cell shield order. Plaintiff's due process claim is also subject to dismissal because he has not clearly identified the defendant(s) who he claims were personally involved in the alleged misconduct.

As a result, plaintiff's due process claim is dismissed without prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### (3) Conditions of Confinement

The constitutional prohibition against cruel and unusual punishment includes the right

---

[9] While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Thus, restrictive confinement in the special housing unit of less than 101 days, on its own, does not generally rise to the level of an atypical and significant hardship. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000).

[10] Courts have also held that "the daily review of deprivation orders, the availability of the inmate grievance program, and the fact that the inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law." *Dawes v. Coughlin*, 964 F. Supp. 652, 658 (N.D.N.Y. 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998). Plaintiff has not alleged that any of these remedies were unavailable to him,

8

to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834. Although it is clear that the Eighth Amendment "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer,* 511 U.S. at 832 and *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

Conditions of confinement are not cruel and unusual for Eighth Amendment purposes simply because they are "restrictive and even harsh." *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir. 1985). Rather, many unpleasant aspects of prison life "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (citation omitted); *see e.g.*, *DeMaio v. Mann*, 877 F. Supp. 89, 93 (N.D.N.Y. 1995) (use of plexiglass shield on cell that does not interfere with air flow does not violate the Eighth or Fourteenth Amendment).

Here, plaintiff states that he was subjected to a cell shield order after having been wrongfully accused of threatening to throw feces on staff. Compl. at 3. Plaintiff further states that the cell shield remained in place for almost thirty days after the misbehavior report was dismissed, for a total of approximately sixty. *Id.* As alleged, the glass shield was "smothering" during the summer months. *Id.*

Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that plaintiff's Eighth Amendment conditions of confinement claim arising from the cell shield order does not survive sua sponte review and is dismissed without prejudice. In so

ruling, the Court finds that plaintiff has not alleged facts which plausibly suggest that the placement of the cell shield so affected the temperature or air quality in his cell that it could be said that he was deprived of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). The Court also notes that plaintiff does not allege that the cell shield aggravated existing medical conditions or otherwise adversely affected his health. *See Kemp v. LeClaire*, No. 03-CV-0844, 2007 WL 776416, at *8 (W.D.N.Y. Mar. 12, 2007) (prison officials have wide latitude to place restraints on inmates and "only violate the Eighth Amendment if the imposed restraint is 'totally without penological justification, grossly disproportionate, or involves the unnecessary and wanton infliction of pain.'" (citation omitted)). In addition, plaintiff's claim is subject to dismissal because he has not clearly identified the defendant(s) responsible for having the cell shield placed on his cell, nor has he alleged that any defendant acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300); *see Farmer*, 511 U.S. at 835 ("deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.).

As a result, plaintiff's Eight Amendment conditions of confinement claim relating to the cell shield is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### (4) Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendant took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional

rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

The Second Circuit has long instructed that because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Analysis of retaliation claims thus requires thoughtful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the factual allegations tending to link the two. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Here, plaintiff alleges that he was assaulted by C.O. Bean and falsely accused of having threatened to throw feces on corrections staff "out of retaliation." Compl. at 3. Upon review, the Court finds that plaintiff has not alleged any facts which even suggest that plaintiff had engaged in "protected conduct," let alone that C.O. Bean was aware of that activity and that it was a "substantial or motivating factor" behind the alleged assault and misbehavior report.

As a result, plaintiff's First Amendment retaliation claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### (5) Interference with Mail

The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are "'reasonably related to legitimate penological interests.'" *Thornburgh v. Abbott,* 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *see also Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right - albeit a limited one - to send and receive mail). Legal mail is entitled to greater protection from interference than nonlegal mail. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003). A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *see also Cancel v. Goord*, No. 00 CIV. 2042, 2001 WL 303713, at *5-6 (S.D.N.Y. Mar. 29, 2001) (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice).

Here, plaintiff complains that "illegally my mail was being tampered with there [at Clinton C.F.] & in Southport [Correctional Facility]" where he was confined when the complaint was filed. Compl. at 2. Plaintiff states that the alleged mail tampering would account for his complaint being "late." *Id.*[11] No other facts are alleged.

Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that the allegations in the complaint do not plausibly suggest that one or more of the named defendants interfered with his mail at Clinton C.F. in violation of his constitutional

---

[11] An interference with legal mail may, under certain conditions, violate an inmate's First Amendment right of access to the courts. *See Davis*, 320 F.3d at 351. In this case, because plaintiff's complaint appears to have been timely filed, the complaint cannot be read to suggest a plausible First Amendment claim for denial of access to the courts.

12

rights. In addition, because none of the defendants are identified as employees of Southport Correctional Facility, the complaint does not state a cognizable claim of mail interference arising out of plaintiff's confinement at that facility.[12]

As a result, plaintiff's First Amendment mail interference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)and 28 U.S.C. § 1915A(b)(1).

### (6) Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764, at *2 (N.D.N.Y. 1996). Moreover, "[f]or Eleventh Amendment purposes, governmental

---

[12] The Court also notes that because Southport Correctional Facility is located in the Western District of New York, claims arising at that facility are not properly venued in this District.

entities of a state that are considered 'arms of the state' receive Eleventh Amendment immunity." *Dawkins*, 1996 WL 156764, at *2. It is well-settled that DOCCS is "entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." *Santiago v. New York State Dep't. of Corr. Serv.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citations omitted). A state correctional facility, which has no separate legal existence, is generally referred to as a "branch" of DOCCS and, as such, is immune from Section 1983 liability. *See Rivera v. Goord*, 119 F. Supp.2d 327, 336 (S.D.N.Y. 2000).

Here, plaintiff's claims for money damages against DOCCS and Clinton C.F. are barred by the Eleventh Amendment. As a result, these claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 5) is **GRANTED**;[13] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 6), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's authorization form (Dkt. No. 6) to

---

[13] Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

14

the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** the plaintiff's excessive force claim against C.O. Bean survives the Court's sua sponte review of the complaint pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and requires a response; and it is further

**ORDERED** the plaintiff's Section 1983 claims for money damages against DOCCS and Clinton C.F. are barred by the Eleventh Amendment and are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2); and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);[14] and it is further

**ORDERED** that the Clerk shall terminate DOCCS, Clinton C.F., Deputy Security Superintendent Brown, and Superintendent Racette as defendants in this action; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the complaint, to the United States Marshal for service on defendant C.O. Bean. The Clerk shall forward a copy of the summons and complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint shall be filed by defendant, or his counsel,

---

[14] Should plaintiff seek to pursue one or more of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

15

as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: June 17, 2015
Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge